IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

MARY B. HICKMAN,                )       CIVIL ACTION 4:04-23340-JFA-TER
                           )
        Plaintiff,      )
                           )
      v.             )
                           )       <u>REPORT AND RECOMMENDATION</u>
JO ANNE B. BARNHART      )
COMMISSIONER OF SOCIAL      )
SECURITY,              )
                           )
        Defendant.     )
_____ )

      This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

      The plaintiff, Mary B. Hickman, filed an application for SSI on January 14, 2003, alleging inability to work since March 2, 2001, due to nerve damage in her back, and pain on her right side that travels down her leg (Tr. 60). Her application was denied at all administrative levels, and upon reconsideration (Tr. 26-30, 34). The Administrative Law Judge (ALJ) issued an unfavorable decision on July 23, 2004, finding plaintiff was not disabled because she retained residual functional

capacity for sedentary work[1] and could perform her past relevant work as a telemarketer as she

performed it or as generally performed in the national economy (Tr. 22).    The Appeals Council

denied plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final

decision for purposes of judicial review under Section 205(g) of the Act.      A hearing was held before

Administrative Law Judge, Richard Vogel, in Charleston, South Carolina on May 13, 2004 (Tr. 388-

408). The plaintiff was present and gave testimony and was represented by Beatrice Whitten,

Attorney.

## II.  FACTUAL BACKGROUND

The plaintiff, Mary Hickman, was born November 25, 1947,  and was 56  years old at the

time of the ALJ's decision.  (Tr. 16, 58). She has a ninth grade education, and has prior work

experience as a retail salesperson and telemarketer (Tr. 16, 61, 66).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

    (1)    The ALJ erroneously found that the claimant did not meet a
           listing.

    (2)    The ALJ failed to properly distribute the weight of medical
           evidence.

---

[1]"Sedentary work involves lifting no more than ten pounds at a time and occasionally
lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job
is defined as one which involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a)(2004).

      (3)     The ALJ conducted a flawed credibility analysis of the claimant.

(Plaintiff's memorandum).

In the decision of July 23, 2004, the ALJ found the following:

1.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.     The claimant's arachnoiditis is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 416.920).

3.     This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.     The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.     The claimant has the residual functional capacity to: sit for 6 hours of an 8 hour day; stand/walk for 2 hours of an 8 hour day; frequently lift/carry light items; and occasionally lift 10 pounds.

6.     The claimant's past relevant work as telemarketer did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965).

7.     The claimant's medically determinable arachnoiditis does not prevent the claimant from performing her past relevant work.

8.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)).

(Tr. 22).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept

3

as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under

the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final

decision is limited to: (1) whether the decision of the Commissioner is supported by substantial

evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling

law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d

802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept

as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally

equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739

F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not

conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be

upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C.

§ 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five

questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§

404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an

impairment which equals a condition contained within the Social Security Administration's official

listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an

impairment which prevents past relevant work and (5) whether the claimant's impairments prevent

him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by

the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.

On March 28, 2002, plaintiff was seen at the MUSC for followup of her hypertension. Plaintiff indicated that she had a smoking history. A chest x-ray revealed non-specific mild interstitial pattern with no evidence of a focal consolidation or mass. Plaintiff was diagnosed with hypertension (improved), depression (mild), and tobacco abuse (Tr. 298-300).

On April 22, 2002, plaintiff was seen in the emergency room at Charleston Memorial Hospital for complaints of left foot pain. Plaintiff was diagnosed with gout (Tr. 93-102).

On June 6, 2002, plaintiff was seen on followup for a refill of her medications for gout and depression. Plaintiff was diagnosed with tobacco abuse, hypertension (improved), and depression (stable) (Tr. 296-297).

On July 18, 2002, plaintiff was in for a 1-month followup. She indicated that she was out of her blood pressure medication. She was diagnosed with hypertension under fair control, hypokalemia, and left lower lobe pneumonia (Tr. 293-294).

On August 8, 2002, plaintiff presented to the emergency room of Charleston Memorial Hospital for complaints of pain in her right buttock, plaintiff was diagnosed with sciatica (Tr. 124-132).

On August 19, 2002, plaintiff returned to the emergency room for complaints of right hip pain. Plaintiff was diagnosed once again with sciatica (Tr. 133-139).

On August 22, 2002, plaintiff was seen on followup for her lower back pain. On examination, plaintiff sat shifted to the left side with her right leg extended; her deep tendon reflexes

were 2+ bilaterally; her gross strength and senses were intact; and her straight leg raising was negative on the left, but produced sciatic symptoms on the right at 10 degrees. Chest x-rays revealed interval resolution of a left mid and lower lung pneumonia and mild interstitial lung disease unchanged from prior studies. Lumbar spine x-rays revealed mild spondylosis of the spine and degenerative disc disease at L4-5. Plaintiff was diagnosed with right sided back pain/sciatica, status post left lower lung pneumonia, and hypertension (improved) (Tr. 289-292).

On September 13, 2002, an MRI of plaintiff's lumbar spine revealed moderately severe lumbar spondylosis at L4-5 and L5-S1 with contact of the bilateral L5 and S1 nerve roots; and caudal nerve root clumping suspicious for arachnoiditis, for which clinical correlation was recommended (Tr. 287).

On October 8, 2002, plaintiff saw Stephen Haines, M.D., for a neurosurgical consultation. On examination, plaintiff walked with a stiff slow gait; she had a reduced range of motion in her lumbar spine; she had normal strength in her upper and lower extremities; she had positive straight leg raising on the right at 40 degrees with sciatica and back pain as a consequence; her reflexes were intact at 2+ throughout; she did not have any subjective sensory or motor loss; and she was tender to palpation over the lumbar region. Dr. Haines noted that an MRI revealed lumbar spondylosis with some narrowing and clumping of the nerve root that was consistent with arachnoiditis. He diagnosed chronic back and leg pain which may be partially caused by arachnoiditis and recommended a CT myelogram to better examine the subarachnoid space in the lumbar spine (Tr. 281-284).

On October 29, 2002, Dr. Haines noted that the CT myelogram confirmed that plaintiff had arachnoiditis and focal lumbar stenosis at L4-5 (Tr. see also Tr. 279-280 for CT myelogram report).

7

He referred plaintiff for pain management as there was not good surgical treatment for arachnoiditis (Tr. 278).

On January 3, 2003, plaintiff was seen by David Thomas, M.D. at the MUSC pain management clinic. On examination, plaintiff was grossly neurologically intact to sensory and motor examination in her upper and lower extremities; she had point tenderness over L4-5 to palpation with bilateral paraspinous muscle tenderness and superior gluteal muscle tenderness bilaterally; and she had no radicular signs in her lower extremities. Dr. Thomas diagnosed low back pain secondary to spinal canal stenosis and L4-5 arachnoiditis; spondylosis of the lumbar spine; and central disc bulge at L4-5. Dr. Thomas scheduled plaintiff for a lumbar epidural steroid injection (Tr. 275-277).

On February 13, 2003, plaintiff was seen on followup for her hypertension and back pain. Plaintiff stated that the lumbar epidural steroid injection did not help much. On examination, she had sciatic pain on straight leg raising at 30 degrees. She was diagnosed with low back pain hypertension (Tr. 273-274).

On March 12, 2003, Charles N. Straney, a disability examiner, asked plaintiff about her pain complaints. Plaintiff stated that she suffered from consistent pain in her lower back. She stated that she had to usually change positions every 10-30 minutes. She stated that once in awhile she only had to change positions every hour, but her pain intensified and she would have to change positions more frequently. She stated that she could not lift more than five pounds, could not stand at the sink to do dishes, could not do the laundry, and could not engage in activities that required lifting. She rated her pain as an eight on a scale of 8-10 (Tr. 150).

On March 31, 2003, George T. Keller, III, M.D., a non-examining State agency physician, completed a Physical Residual Functional Capacity Assessment, in which he opined that plaintiff could perform sedentary work (Tr. 156-167).

On April 6, 2003, plaintiff was admitted to the MUSC for complaints of swelling in her lower legs and feet, which worsened with standing (Tr. 168). An echocardiogram (EKG) revealed a left bundle branch block (Tr. 170, 177, 179). A thallium stress test revealed a normal left ventribular ejection fraction of 56% (Tr. 170, 177). A cardiologist opined that plaintiff did not need to undergo a left heart catheterization (Tr. 170). Plaintiff's potassium level was 2.9 (Tr. 171). Plaintiff underwent a laser lithotripsy with stent placement for her kidney stone (Tr. 170, 174-176). She was discharged on April 11, 2003, with diagnoses of nephrolithiasis (kidney stones), hypokalemia, hypertension, and lower extremity edema secondary to venous insufficiency (Tr. 171).

On April 15, 2003, plaintiff was seen at the MUSC spine clinic by Kerri A. Kolehma, M.D. Plaintiff stated that she suffered from low back pain during the previous six months with radiation into her right leg. She described her pain as dull and aching that was somewhat relieved with Darvocet. She stated that she only took Darvocet twice a day because she was concerned about becoming addicted. On examination, plaintiff's lumbar motion was normal; her lower extremity motor, sensation, and reflexes were normal; she had negative seated and positive straight leg raising, on the right she had pain in her back; and she had minimal muscle spasms in the lumbar region. Dr. Kolehma explained to plaintiff that she should take Darvocet four times a day as prescribed by her primary care physician (Tr. 269).

On May 7, 2003, plaintiff underwent removal of her cystourethroscopy stent (Tr. 266).

9

On May 19, 2003, plaintiff returned to the MUSC emergency room with complaints of urinary frequency and back pain. Plaintiff was diagnosed with recurrent kidney stones (Tr. 187).

On May 29, 2003, plaintiff presented to the emergency room with complaints of right flank pain. Plaintiff was diagnosed with a right ureter stone (Tr. 196-199).

On May 31, 2003, plaintiff returned to the emergency room with complaints of swelling in her lower extremities. Plaintiff was diagnosed with right lower extremity edema and hypertension (Tr. 193-195).

On July 15, 2003, F. Keels Baker, M.D., a non-examining Stage agency physician, completed a Physical Residual Functional Capacity Assessment, in which he opined that plaintiff could perform sedentary work (Tr. 200-211).

On July 22, 2003, plaintiff returned to see Dr. Kolehma at the MUSC spine clinic. Plaintiff continued to complain of low back pain greater on the right side. She stated she was still taking one to two Darvocets per day because she did not like to take medications. On examination, plaintiff's lumbar motion was normal; her lower extremity motor, sensation, and reflexes were normal; she had muscle spasms in her lumbar region; and she had loss of lumbar lordosis. Dr. Kolehma recommended that plaintiff take more Darvocet to see if it would control her pain. He also referred plaintiff for consideration of a spinal cord stimulator (Tr. 263).

On September 6, 2003, plaintiff was admitted to the MUSC for complaints of chest pain. A chest x-ray revealed a minimally enlarged cardiac silhouette and evidence of cervical spine surgery. An EKG revealed a left bundle branch block. A CT scan revealed no evidence of pulmonary embolus or deep venous thrombosis, a surgical clip in the left femoral region, and a hemangioma in the T7 vertebral body. On September 8, 2003, plaintiff underwent a left heart catheterizatiion which

revealed mild non-obstructive coronary artery disease, normal left ventricular systolic function, and an ejection fraction of greater than 60%. She was discharged on September 9, 2003, with diagnoses of acute coronary syndrome, hypertension, nephrolithiasis, degenerative joint disease, chronic back pain, and hypokalemia. (Tr. 212-216).

On October 15, 2003, neurosurgeon Istvan Takacs, M.D., saw plaintiff on referral from Dr. Kolehma. On examination, plaintiff ambulated without support; her cranial nerves were intact; she was able to stand on her toes and heels and balance on one leg; her sensation was intact; and she was tender to palpation along with paraspinous musculature bilaterally from the sacrum to the thoracic spine (Tr. 257).

On January 5, 2004, plaintiff returned to the emergency room for complaints of right flank pain (Tr. 234-241). A CT scan revealed nephrolithiasis; left ureterovesical junction stone, not significantly changed from the prior study, mild minimal hydronephrosis; and pericecal ascending colon stranding (Tr. 235). Plaintiff was diagnosed with right flank pain, nephrolithiasis (unchanged), and hypokalemia (Tr. 240).

On January 27, 2004, plaintiff underwent surgery for implantation of a spinal cord stimulator by Dr. Takacs (Tr. 242-245).

On March 4, 2004, plaintiff was seen for complaints of back pain, but she denied numbness, paresthesias, weakness, or difficulties with her bowel or bladder (Tr. 246).

On April 2, 2004, plaintiff was seen in the emergency room for complaints of right flank pain. A CT scan revealed a small non-obstructive stone in the midpole of the right kidney, unchanged from January 5, 2004; splenomegaly; and a very mild fat stranding surrounding the lateral aspect of the cecum, unchanged. (Tr. 301-308).

## V.  PLAINTIFF'S SPECIFIC ARGUMENTS

Plaintiff asserts that the ALJ afforded greater weight to the opinions of the DDS medical consultants while effectively ignoring those of plaintiff's treating physicians. Plaintiff asserts that the ALJ discounted the rest of the medical evidence in its entirety.

Defendant argues that the ALJ properly gave significant weight to the opinions of Drs. Keller and Baker, both nonexamining state agency physicians, who were the only physicians of record to assess plaintiff's functional capacity.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record.  20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").  Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight.  In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account.  Id.  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

A review of the hearing decision reveals that the ALJ found the following:

12

> Pursuant to 20 CFR § 404.1527 and Social Security Ruling 96-6p and 96-2p, the undersigned has considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants. The undersigned notes that none of the claimant's treating or evaluating physicians have made any medical opinion regarding the claimant's functional limitations.
>
> Regarding the medical opinions of the DDS medical consultants, the undersigned agrees with their general opinion regarding the claimant's ability to perform sedentary work activity and with their opinion that the claimant's mental impairments were not severe. While the DDS medical consultants and the undersigned disagreed on further limitations, the undersigned accords the DDS general opinions significant weight as their opinions also support a finding of not disabled.

(Tr. 20).

Based on the above, the undersigned finds that the ALJ fully set forth his reasoning and there is substantial evidence to support the weight he placed on the opinions of the medical consultants. As the ALJ noted, there were no functional capacity evaluations completed by any of plaintiff's physicians and there were no significant limitations placed on plaintiff by her treating physicians. In regard to her residual functional capacity, the ALJ held the following:

> Accordingly, the undersigned finds the claimant retains the residual functional capacity to: sit for 6 hours of an 8-hour day; stand/walk for 2 hours of an 8-hour day; frequently lift/carry light items; and occasionally lift 10 pounds.
>
> While the claimant has been diagnosed with arachnoiditis, medical records from January 2003, reflect that the claimant reported not being able to work sedentary [due] to an inability to stand on her feet for a prolonged period of time. Thus, I have accommodated the claimant's condition and her explanation of why she is unable to work by limiting the amount she can sit, stand, walk, lift and carry.

(Tr. 21).

13

Based on the record, there is substantial evidence to support the weight the undersigned

placed on the medical consultant's opinion that plaintiff could perform sedentary work.

Next, plaintiff argues that the ALJ erroneously found that her impairments were not severe

enough to meet Listing 1.04(b), Disorders of the Spine. Plaintiff argues that her spinal disorder meets

the requirements of Listing 1.04(b). In her memorandum, plaintiff discusses her medicals  in detail.

Defendant argues that there is no doubt that plaintiff suffers from a disorder of the spine, e.g.,

degenerative disc disease that resulted in compromise of a nerve root, and spinal arachnoiditis

confirmed by appropriate medically acceptable imaging. (Tr. 279-280). However, defendant asserts

that the examinations of record did not demonstrate severe burning or painful dysesthesia resulting

in the need for changes in position or posture more than once every two hours. Defendants state that

in October 2002, plaintiff only complained of back pain with radiation down her leg for which the

doctor diagnosed sciatica. Defendants cite to the medical records in January 2003, in which Dr.

Thomas noted she was grossly neurologically intact to sensory and motor examination and that she

had radicular signs in her legs. In April 2003, defendants contend that Dr. Kolehma found plaintiff's

lower extremity motor, sensation, and reflexes were normal. (Tr, 269). Further, defendant asserts that

later in July 2003, Dr. Thomas again found lower extremity motor, sensation, reflexes were normal.

In October 2003, defendants point out that Dr. Tackas, a treating neurosurgeon, found plaintiff's

sensation intact. Thus, defendants argue that these examinations reveal that plaintiff did not meet

Listing 1.04B.

The Social Security Administration has developed a lengthy list of impairments, "considered

severe enough to prevent a person from doing any gainful activity."   The list contains those

impairments which preclude a person from engaging in **any** gainful activity, not merely substantial

gainful activity.  Sullivan v. Zebley, 493 US 521, (1990).  Each Listed impairment has one or more

components, and for each component, the Social Security administration has prescribed a certain

degree of intensity which the agency considers sufficiently serious to disable a claimant.  The

plaintiff's impairment must satisfy all of the components of the Listing.  If there is an exact match

between the plaintiff's impairment and the Listing, the plaintiff is found disabled, without regard to

vocational factors.  If the impairment does not satisfy **every** component, then the impairment does

not meet the Listing. Id. In addition, the plaintiff has to establish that his impairment, which  met all

of the criteria of the Listing, would last for twelve consecutive months.  20 CFR §§ 404.1505(a),

416.905(a).  An impairment which improves to the point that the claimant is capable of returning to

work in less than 12 months is not a disabling impairment, no matter how much it incapacitates the

claimant during its most exacerbated phase.

A review of  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 along with the medical

evidence of record reveals that plaintiff did not meet the listing for Listing 1.04. Section 1.04

requires that the disorder result in *compromise of the nerve root or the spinal cord* with either (1)

evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation

of motion of the spine, motor loss accompanied by sensory or motor loss and, if there is involvement

of the lower back, positive straight leg raising test; or (2) spinal arachnoiditis, confirmed by an

operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging,

manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or

posture  more  than  once  every  two  hours;  or  (3)  lumbar  spinal  stenosis  resulting  in

psuedoclaudication, established by findings on appropriate medically acceptable imaging, manifested

by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as

defined in § 1.00(B)(2)(b).

      The ALJ concluded the following in his decision with regards to this issue:

> The medical evidence indicates that the claimant has arachnoiditis, an
> impairment that is severe within the meaning of the Regulations but
> not severe enough to meet or medically equal one of the impairments
> listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 20).

      The ALJ did not analyze why or what portions of the Listing he found plaintiff did not meet.

The ALJ specifically found that plaintiff has arachnoiditis, a severe impairment, but did not discuss

his rationale for finding that plaintiff did not meet Listing 1.04. In the medical portion of the Order,

the ALJ discussed the fact that plaintiff was seen on numerous occasions complaining of leg pain

and pain radiating into her legs. The medical records reveal that plaintiff was constantly in for

medical help for her back and leg pain. It was noted in the examination notes that plaintiff was tender

to the touch upon exam. Plaintiff's CT Myelogram revealed a central disc bulge at L4-5 as well as

hypertrophy of the ligamentum flavum at this level resulting in severe spinal canal stenosis;

clumping of the nerve roots at L4-5 level consistent with arachnoiditis, and spondylosis of the

lumbar spine.  Plaintiff underwent surgical implantation of a spinal cord stimulator to attempt to get

relief from the pain and spasms.

      As a result of the ALJ's failure to explain his assessment of why plaintiff does not meet

Listing 1.04, the court is unable to ascertain whether the Commissioner's decision is supported by

substantial evidence. Accordingly, it is recommended that this case be remanded back to the

Commissioner to give the proper analysis as to why the    ALJ finds that plaintiff does not meet the requirements of Listing 1.04.

Without a proper analysis by the ALJ of why he concludes plaintiff does not meet the requirements of the Listing, this court cannot determine if there is substantial evidence to support the ALJ's determination of plaintiff's credibility.

## VI.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 9, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

17

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**

**The Serious Consequences of a Failure to Do So**

      The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. **28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).**  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. **Fed. R. Civ. P. 6.**  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* Mathews v. Weber, **423 U.S. 261, 270-271 (1976); and** Estrada v. Witkowski, **816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).**

      During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.  *See* Keeler v. Pea, **782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and** Oliverson v. West Valley City, **875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* United States v. Schronce, **727 F.2d 91, 94 & n. 4 (4th Cir.),** *cert. denied*, Schronce v. United States, **467 U.S. 1208 (1984); and** Wright v. Collins, **766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, **932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).**  *See also* Praylow v. Martin, **761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court),** *cert. denied*, **474 U.S. 1009 (1985).**  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

>     A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *   We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, **843 F.2d 1015, 1017-1019 (7th Cir. 1988),** where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

>     Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, **886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"),** which involved a *pro se* litigant; and Goney v. Clark, **749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").**  This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections.  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, **892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina  29503
